# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL LOCKE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>QIAO XING UNIVERSAL TELEPHONE, INC., RUI LIN WU, ALBERT LEUNG, ZHI YANG WU, SONNY KWOK WING HUNG, ZE YUN MU, YI HONG ZHANG, and GROBSTEIN, HORWATH & COMPANY LLP,<br><br>Defendants. | **Civil Action No. 07-cv-07693-UA**<br><br>CLASS ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Michael Locke ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Qiao Xing Universal Telephone, Inc. ("Qiao Xing" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a federal class action on behalf of purchasers of the Qiao Xing's securities between June 20, 2006 and July 16, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Qiao Xing, together with its subsidiaries, engages in the sale of

telecommunication terminals and equipment, including cord and cordless telephone sets, in Mainland China. The Company is also engaged in the production and sale of mobile phones and accessories.

3.      The Company shocked investors on July 17, 2007 when it disclosed that it was forced to restate its previously issued financial statements for the years ending December 31, 2003, 2004, and 2005. The Company stated that "certain misstatements" were not detected due to multiple deficiencies in the Company's system of internal controls over financial reporting, including an insufficient complement of personnel with accounting knowledge, lack of an effective enterprise risk management system, lack of an effective anti-fraud program and whistleblower system, and lack of an independent and effective internal audit function.

4.      On this news, shares of Qiao Xing fell $2.93 per share, or 21 percent, to close on July 17, 2007 at $11.04 per share, on unusually heavy trading volume.

5.      The Complaint alleges that, throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being. Specifically, defendants failed to disclose or indicate the following: (1) that the Company had materially overstated its net income for the years ended December 31, 2003, December 31, 2004, and December 31, 2005; (2) that the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (3) that the Company lacked adequate internal and financial reporting controls; and (4) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

6.      As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

8.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

9.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District.  Additionally, Qiao Xing's securities are actively traded in the Judicial District on the NASDAQ.

10.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11.    Plaintiff, Michael Locke, as set forth in the accompanying certification, incorporated by reference herein, purchased Qiao Xing's securities at artificially inflated prices during the Class Period and has been damaged thereby.

12.    Defendant Qiao Xing is a British Virgin Islands corporation with its principal executive offices located at Qiao Xing Science Industrial Park, Huizhou City, Guangdong, People's Republic of China.

13.    Defendant Rui Lin Wu  ("R. Wu") was, at all relevant times, the Company's Chief

Executive Officer ("CEO"), and Chairman of the Board of Directors. Defendant Wu was also, at all relevant times, the Vice Chairman of the Company's subsidiary, Qiao Xing Mobile Communication Company, Limited's ("Qiao Xing Mobile") Board of Directors.

14. Defendant Albert Leung ("Leung") was, at all relevant times, the Company's Chief Financial Officer ("CFO").

15. Defendant Zhi Yang Wu ("Z. Wu") was, at all relevant times, the Company's Vice Chairman and Secretary. Defendant Yang was also, at all relevant times, the Chairman of Qiao Xing Mobile's Board of Directors.

16. Defendant Sonny Kwok Wing Hung ("Hung") was, at all relevant times, a member of the Company's Board of Directors, and a member of the Board's Audit Committee.

17. Defendant Ze Yun Mu ("Mu") was, at all relevant times, a member of the Company's Board of Directors, and a member of the Board's Audit Committee.

18. Defendant Yi Hong Zhang ("Zhang") was, at all relevant times, a member of the Company's Board of Directors, and a member of the Board's Audit Committee.

19. Defendants R. Wu, Leung, Z. Wu, Hung, Mu, and Zhang are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Qiao Xing's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified

herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

20.    Defendant Grobstein, Horwath & Company LLP ("Grobstein Horwath") was the Company's independent registered accounting firm, and offered fairness opinions regarding the Company's false and misleading statements as alleged herein. Grobstein Horwath renders attestation, tax, and consulting services to domestic and international SEC reporting companies. The firm offers asset valuations, stock option valuations, internal control evaluations, income tax planning, audit committee consultation, financial statement audits, quarterly reviews, and other consulting services. Grobstein Horwath also specializes in services geared toward clients on both the American and the Asian sides of the Pacific Rim. Grobstein Horwath maintains its principal place of business at 15233 Ventura Boulevard, Ninth Floor, Sherman Oaks, California.

## SUBSTANTIVE ALLEGATIONS

### Background

21.    Qiao Xing, together with its subsidiaries, engages in the sale of telecommunication terminals and equipment, including cord and cordless telephone sets, in Mainland China. The Company is also engaged in the production and sale of mobile phones and accessories.

### Materially False and Misleading
### Statements Issued During the Class Period

22.    The Class Period begins on June 20, 2006. On this day, the Company issued a press release entitled "Qiao Xing Universal Reports 2005 Financial Results." Therein, the

Company, in relevant part, stated:

**Company's Revenue Rise 42.4% and Net Income Increase by over 900%**

Qiao Xing Universal Telephone, Inc. (Nasdaq: XING) announced that today it files its 2005 annual report on Form 20-F with SEC. For the fiscal year 2005, the Company recorded:

- Net sales of US$356 million, increasing by 42.4% over that for 2004,

- Gross margin ratio of 17.0% versus 11.1% for 2004

- Income from operations increased by around 400% to US$45 million, compared with US$8 million for 2004

- Net income of US$31 million, compared with US$3 million for 2004, an increase of 987%.

* * *

***Mr. Wu Rui Lin, Chairman of XING, said, "We are pleased that the Company's financial results have improved significantly over past years***, indication that we have found our place in this fiercely competitive business sector in which we operate. Among our many competitive advantages, one is our devoted emphasis on research and development, with our strong team who are capable of continuously coming up with innovative ideas and turning them into products. Being a local player with an extensive sales network has allowed us to develop a deep understanding of consumer needs and tastes. This knowledge, updated constantly and shared freely among those involved, is put to use without delay especially by our product development people. This explains why our new products follow closely the latest trends and are invariably met with warm reception in the market."

***Mr. Wu Zhi Yang, Chairman of CECT and Vice-chairman of XING, said, "Only a few years after it became a member of XING, CECT's sales revenue has grown sevenfold to become one of the major local players in China's mobile handset market. Not only is it fast growing, it has outstanding profit numbers as compared with its local rivals.*** Its winning business model, consisting of high-end product strategy, product differentiation, continuous business process improvement and vigorous cost control, is at the heart of this stellar performance." [Emphasis added.]

23.    Also on June 20, 2006, the Company filed its 2005 Annual Report (ended December 31, 2005) with the SEC on Form 20-F.   The Company's 20-F was signed by Defendant R. Wu, and detailed the Company's financial results for the years ended December 31, 2003, December 31, 2004, and December 31, 2005.  Additionally, the Company, in relevant part, stated:

> *We prepare our consolidated financial statements in accordance with United States Generally Accepted Accounting Principles ("US GAAP").* The following summary consolidated statements of operations data for the years ended December 31, 2003, 2004 and 2005 and the consolidated balance sheet data as of December 31, 2004 and 2005 were derived from our audited financial statements included elsewhere in this annual report and should be read in conjunction with such financial statements.
>
> * * *
>
> *Net sales revenue increased by Rmb 855 million from Rmb 2,019 million for fiscal year 2004 to Rmb 2,874 million (US$ 356 million) for fiscal year 2005, representing an increase of 42.4%.* The Mainland China phone business segment remained highly competitive in 2005. Nevertheless, by adjusting the products sales mix, injecting more resources in developing value added and technologically advanced products and implementing proactive marketing strategies, the Group successfully attained impressive growth in sales.
>
> * * *
>
> *Net income of Rmb 248.7 million (US$30.8 million) was recorded for fiscal year 2005, compared with Rmb 22.9 million for fiscal year 2004.*
>
> * * *
>
> *We carried out an evaluation, under the supervision and with the participation of our chairman and chief financial officer, of the effectiveness of the design and operation of our disclosure controls and procedures* as of the end of our fiscal year pursuant to Exchange Act Rule 13(a)-14(c). Based on this evaluation, which will be used as input for further improvement actions, *they concluded that our disclosure controls and procedures are effective in timely alerting them to material information about*

*Qiao Xing Universal Telephone, Inc. and its consolidated subsidiaries required to be included in our SEC filings.*

*Additionally, there have been no significant changes in our internal controls or in other factors that could significantly affect those controls subsequent to the date of this evaluation. We have not identified any significant deficiencies or material weaknesses in our internal controls* and, therefore, there were no corrective actions taken. [Emphasis added.]

24.    The Company's Form 20-F also contained Sarbanes-Oxley required certifications, signed by Defendants R. Wu and Leung, who stated:

I, [Rui Lin Wu / Albert Leung], certify that:

1.    I have reviewed this annual report on Form 20-F of Qiao Xing Universal Telephone, Inc.;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report;

4.    The company's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the company and have:

(a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting

to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the company's internal control over financial reporting; and

5. The company's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the company's auditors and the audit committee of the company's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

* * *

In connection with the annual report of Qiao Xing Universal Telephone, Inc. (the "Company") on Form 20-F for the fiscal year ended December 31, 2005, as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, [Rui Lin Wu, Chief Executive Officer / Albert Leung, Chief Financial Officer] of the Company, certify, pursuant to Rule 13a-14(b) and 18 U.S.C. $ 1350, that

(1) The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)    The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

25.    Additionally, the Company's Form 20-F contained a report from the Company's independent registered accounting firm, Grobstein Horwath.    The report stated that the Company's consolidated financial statements fairly presented, in all material respects, the consolidated financial position of the Company and its subsidiaries, and was in conformity with U.S. GAAP.  The report, in relevant part, stated:

> *We have audited the accompanying consolidated balance sheets of Qiao Xing Universal Telephone, Inc. and Subsidiaries (the "Company") as of December 31, 2004 and 2005 and the related consolidated statements of operations and comprehensive income, cash flows and shareholders' equity for each of the years in the three-year period ended December 31, 2005.* These consolidated financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these consolidated financial statements based on our audits.
>
> *We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States).* Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the consolidated financial statements are free of material misstatement. The Company is not required to have, nor were we engaged to perform, an audit of its internal controls over financial reporting. *Our audits included consideration of internal controls over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances*, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly we express no such opinion. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the consolidated financial statements. *An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall consolidated financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.*
>
> *In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the consolidated*

10

*financial position of Qiao Xing Universal Telephone, Inc. and Subsidiaries as of December 31, 2004 and 2005, and the consolidated results of their operations and cash flows for each of the years in the three-year period ended December 31, 2005 in conformity with accounting principles generally accepted in the United States of America.* [Emphasis added.]

26.    On June 30, 2006, the Company issued a press release entitled "Qiao Xing Universal Telephone, Inc. to Release Certain Key Financial Data for 2006 Q1 Next Week and to Provide More Comprehensive Quarterly Financial Reporting Starting 2006 Q3." Therein, the Company, in relevant part, stated:

> Qiao Xing Universal Telephone, Inc. today announced that it would release certain key financial data for the first quarter of 2006 next week and that starting from the third quarter of 2006 it would provide more comprehensive quarterly financial reporting. Quarterly reporting starting from 2006 Q3, like half-yearly reporting starting from 2006 H1, will consist of a consolidated balance sheet and a consolidated income statement with information about earnings per share.
>
> **Wu Rui Lin, Chairman of XING, said, "We constantly seek ways to improve on our communication with the investor community, for which 'transparency' is our watchword."** [Emphasis added.]

27.    On July 11, 2006, the Company issued a press release entitled "Qiao Xing Universal Telephone, Inc.'s Net Sales and Gross Profit Increased 18% and 43% Respectively for the First Quarter of 2006." Therein, the Company, in relevant part, stated:

> Qiao Xing Universal Telephone, Inc. (Nasdaq: XING) released today, on an un-audited management account basis, certain key financial data for the first quarter of 2006. *Compared with the same period of the previous year, in the first quarter of 2006, the Company's net sales and gross profit increased 18% and 43% respectively*.
>
> * * *
>
> Mr. Wu Rui Lin, Chairman of XING, said, "Like many other listed companies, XING sets up from time to time Stock Compensation Plans to increase the ability of the Company to secure and retain highly qualified and experienced individuals to serve as officers,

directors, employees or advisors of the Company by affording such individuals the opportunity to participate in the appreciation in value of the common stock of the Company upon exercise of stock options granted to such individuals under the Plans. ***The granting of stock options, though representing an expense in the income statement and having a dilutive effect on earnings, has the advantage of not involving any outflow of cash. In fact, for some senior employees, the lion's share of their total remuneration package is in stock options.*** The share-based compensation recorded for 2006 Q1 related to the 2005 Plan, and was for services rendered over a long period of time. Indeed, we have to go back to 1999 for the last time a similar plan was set up. Stock options, a portion of which were subsequently re-priced, were granted in 1999 and 2000 under the 1999 Plan, resulting in a total amount of stock-based compensation of US$6.1 million charged to the profit and loss account. [Emphasis added.]

28.    On July 28, 2006, the Company filed a Registration Statement with the SEC.

Therein, the Company, in relevant part, stated:

A maximum of 10,165,432 shares of common stock. All of the common shares are issuable upon conversion of our outstanding convertible notes and upon exercise of warrants.

* * *

The Offering: All of the shares of common stock being offered in this prospectus will be issued by us to the shareholders who are offering them for sale. ***The total shares covered by this prospectus will be issued to the selling shareholders upon conversion of their outstanding convertible notes and upon exercise of their outstanding warrants.*** The selling shareholders can use this prospectus to sell all or part of the shares they receive through the exercise of their convertible notes and warrants.

* * *

Proceeds From This Offering: The shareholders selling the common stock in this offering will receive all of the proceeds from their sale, minus any commissions or expenses they incur, ***but we may receive up to $14,809,445 from the exercise, if any, of warrants by the selling shareholders.***

* * *

You should only rely upon the information included in or incorporated by reference into this prospectus or in any prospectus supplement that is delivered to you.

* * *

*The SEC allows us to "incorporate by reference" the information we file with them*, which means that we can disclose important information to you by referring you to those documents. The documents that have been incorporated by reference are an important part of the prospectus, and you should be sure to review that information in order to understand the nature of any investment by you in the common stock. In addition to previously filed documents that are incorporated by reference, documents that we file with the SEC after the date of this prospectus will automatically update and, in some cases, supersede the information in the registration statement. *The documents that we have previously filed and that are incorporated by reference include the following SEC filings (File No. 0-29946):*

- *Our Annual Report on Form 20-F for the fiscal year ended December 31, 2005;*

- *Each of our Reports on Form 6-K filed since December 31, 2005;*

- *Our proxy statement for our annual meeting of shareholders held on December 1, 2006;*

* * *

*Our audited consolidated financial statements as of December 31, 2005 and for each of the three years ended December 31, 2005, have been incorporated by reference in this prospectus in reliance upon the report of Grobstein, Horwath and Company, LLP*, Sherman Oaks, California, independent registered public accounting firm, as set forth in their report thereon included therein and incorporated herein by reference. Such consolidated financial statements are incorporated herein by reference in reliance upon such report given on the authority of such firm as experts in accounting and auditing. [Emphasis added.]

29.    On August 21, 2006, the Company issued a press release entitled "Qiao Xing Universal Telephone, Inc. Provides Estimates of Certain Key Financial Data for the Second

Quarter of 2006 Ahead of the Release of Half-year Financial Statements."  Therein, the

Company, in relevant part, stated:

> Qiao Xing Universal Telephone, Inc. (Nasdaq: XING) today provides an estimate, on an un-audited management account basis, of certain key financial data for the second quarter of 2006 ahead of the release of half-yearly financial statements.
>
> **Net sales for the second quarter of 2006 for XING are estimated to increase 36% from the same period a year earlier to RMB 770.9 million (US$ 96.4 million).** The increase is mainly the result of strong growth momentum in "CECT" brand mobile phone handsets. According to the survey of SINO Market, in the second quarter of 2006, the "CECT" brand moved up one place further in the league table of market share to rank fourth among local players in the mobile phone handset market in China. A number of new models of high-end mobile phones with sophisticated functionalities and distinctive features were launched at competitive prices. Also, there was a higher proportion of higher-end products in the sales mix.
>
> **The Company estimates gross profit for the second quarter of 2006 for XING to increase 90% from the same period a year earlier to RMB 142.4 million (US$ 17.8 million).** The increase mainly came from the "CECT" brand mobile phone handsets. A premium product mix enabled generation of higher gross profit margins. In addition, cost-saving measures in procurement and sub-contracting continued to produce results to bring down the cost of goods sold.
>
> * * *
>
> **Mr. Wu Rui Lin, Chairman of XING, said, "We are pleased to bring to you these estimates of key financial data for the second quarter of 2006. They are highly satisfactory and indicate that the fundamentals of XING's operations are sound.** We maintain our forecast for XING that net sales would grow 30% compared with 2005, and that net income would grow at an average yearly rate of 35% in the medium term.
>
> "XING's consolidated balance sheet as at June 30, 2006 and income statement including information about earnings per share for the six months ended June 30, 2006 are currently under preparation and will be released in several weeks."  [Emphasis added.]

30.    On October 17, 2006, the Company filed a Proxy Statement with the SEC. Therein, the Company, in relevant part, stated:

### BOARD OF DIRECTORS

*Our board of directors has the responsibility for establishing broad corporate policies and for our overall performance*, although it is not involved in day-to-day operating details. The board meets regularly throughout the year, including the annual organization meeting following the annual meeting of shareholders, to review significant developments affecting us and to act upon matters requiring board approval. It also holds special meetings as required from time to time when important matters arise requiring board action between scheduled meetings.

*We have established an audit committee, which currently consists of Sonny Kwok Wing Hung, Ze Yun Mu and Yi Hong Zhang. Its functions are to:*

- *recommend annually to our board of directors the appointment of our independent public accountants;*

- *discuss and review the scope and the fees of the prospective annual audit and review the results with the independent public accountants;*

- review and approve non-audit services of the independent public accountants;

- *review compliance with our existing accounting and financial policies;*

- *review the adequacy of our financial organization; and*

- *review our management's procedures and policies relative to the adequacy of our internal accounting controls and compliance with U.S. federal and state laws relating to financial reporting.* [Emphasis added.]

31.    On October 31, 2006, the Company issued a press release entitled "Qiao Xing Universal Telephone Announces Key Operating Data for the Second Quarter 2006, Planned Acquisition of Remaining 20% Equity Interest of Qiao Xing Mobile Communication, and Positive Sales Momentum for the Week-long National Day Holidays in China."  Therein, the

Company, in relevant part, stated:

> Qiao Xing Universal Telephone, Inc. (Nasdaq: XING) today Announces Key Operating Data for the Second Quarter 2006, Planned Acquisition of Remaining 20% Equity Interest of Qiao Xing Mobile Communication, and Positive Sales Momentum for the Week-long National Day Holidays in China.
>
> Operating Data
>
> **Qiao Xing Universal Telephone's sales and operating income increased 15.6% and 518% respectively in the second quarter versus the first quarter of 2006.** The significant increase in operating income is primarily due to the lack of stock based compensation in the second quarter. Stripping out stock option grants, operating income increased 38% primarily on improved gross profit margins.
>
>              * * *
>
> **Acquisition**
>
> **In addition to the increase in operating performance, Qiao Xing Universal Telephone herein announces an acquisition from the minority shareholder the remaining 20% equity interest of Qiao Xing Mobile Communication**, or QXMC, a British Virgin Islands company that holds a 93.4% interest in the Sino-foreign joint venture CEC Telecom, or CECT, **for $43mn USD, to be paid partly in cash and partly in shares of Qiao Xing Universal Telephone**. The valuation of QXMC was based on the implied valuations from the convertible debenture that was completed in June of this year. The acquisition is expected to be finalized no later than the end of December 2006, and the closing remains subject to customary closing conditions. Qiao Xing Universal Telephone arrived at the decision to make this acquisition based on the historical operating performance of CECT, and also the strategic consideration of converting QXMC into a 100% subsidiary to streamline the ownership structure of CECT.
>
>              * * *
>
> **A financing solution reached with DKR Management via an issuance of $24mn USD in stock and 26mn USD in a convertible provided Funds for the acquisition of the 20% minority interest in QXMC. Terms were finalized on September 18th, and consist of 2 million shares placed at $12 and a CB with a conversion price of $14.30.** [Emphasis added.]

32.    On December 22, 2006, the Company issued a press release entitled "Qiao Xing Universal Telephone, Inc. Releases Its Income Statement for the Three Months Ended September 30, Balance Sheet as at June 30, 2006 and Income Statement for the Six Months Ended June 30, 2006, and Provides an Update on an Acquisition."  Therein, the Company, in relevant part, stated:

> Qiao Xing Universal Telephone, Inc. releases today its Un-audited Income Statement for the Three Months Ended September 30, Un-audited Balance Sheet as at June 30, 2006 and Income Statement for the Six Months Ended June 30, 2006, and provides an update on the acquisition of the remaining 20% equity in Qiao Xing Mobile Communication Co., Ltd.
>
> **Un-audited Income Statement for the Three Months Ended September 30**
>
> ***For the third quarter of 2006, XING's sales revenue, income from operations and net income all increased significantly to reach USD107.7 Million, USD21.0 Million and USD13.2 Million respectively.*** The significant growth was primarily driven by the popularity of the "CECT" branded 'A1000' and 'IP1000' Models and the increasing brand recognition and the expanding distribution network of its 'COSUN' branded mobile phones business. The Basic earnings per common share after extraordinary gain for the third quarter was USD56 cents.
>
> The Un-audited Income Statement for the Three Months Ended September 30 can be found in Appendix I below
>
> **Un-audited Balance Sheet as at June 30, 2006 and Income Statement for the Six Months Ended June 30, 2006**
>
> ***For the six months ended June 30, 2006, the company recorded USD177.5 million, USD15.4million and USD12.5 million for its Net sales, Income from operations and net income before option charge respectively.***
>
> In the first half of 2006, the Company granted to certain employees and an external consultant stock options to purchase all the 2,000,000 shares of common stock authorized and reserved for issuance under the Stock Compensation Plan set up in 2005.

*Mr. Wu Rui Lin, Chairman of XING, said, "The granting of stock options, though representing an expense in the income statement and having a dilutive effect on earnings, has the advantage of not involving any outflow of cash. In fact, for some senior employees, the lion's share of their total remuneration package is in stock options.* The share-based compensation recorded for 2006 H1 related to the 2005 Plan, and was for services rendered over a long period of time.["]

* * *

*For nine months ended September 30, 2006, the company recorded net sales of US$285.2 million and income from operation of US$36.3 million. Net income and basic earnings per share were US$18.4 million and USD 80 cents respectively* using the Black-Scholes Model. If the intrinsic value method had been used, they respectively would have been US$25.7 million and USD1.13 instead.  [Emphasis added.]

33.    On January 3, 2007, the Company filed a Prospectus with the SEC.  Therein, the Company stated that it was registering the sale of over 4 million shares of Company stock, which were issuable upon conversion of outstanding convertible notes and upon exercise of warrants by selling stockholders.  Therein, the Company, in relevant part, stated:

A maximum of 4,042,427 shares of common stock. All of the common shares are issuable upon conversion of our outstanding convertible notes and upon exercise of warrants.

* * *

The Offering: All of the shares of common stock being offered in this prospectus will be issued by us to the shareholders who are offering them for sale. *The total shares covered by this prospectus will be issued to the selling shareholders upon conversion of their outstanding convertible notes and upon exercise of their outstanding warrants.* The selling shareholders can use this prospectus to sell all or part of the shares they receive through the exercise of their convertible notes and warrants.

* * *

Proceeds From This Offering: The shareholders selling the common stock in this offering will receive all of the proceeds from their sale, minus any commissions or expenses they incur, but *we*

*may receive up to $7,800,007 from the exercise, if any, of warrants by the selling shareholders.*

* * *

You should only rely upon the information included in or incorporated by reference into this prospectus or in any prospectus supplement that is delivered to you

* * *

**The SEC allows us to "incorporate by reference" the information we file with them**, which means that we can disclose important information to you by referring you to those documents. The documents that have been incorporated by reference are an important part of the prospectus, and you should be sure to review that information in order to understand the nature of any investment by you in the common stock. In addition to previously filed documents that are incorporated by reference, documents that we file with the SEC after the date of this prospectus will automatically update and, in some cases, supersede the information in the registration statement. ***The documents that we have previously filed and that are incorporated by reference include the following SEC filings (File No. 0-29946):***

- ***Our Annual Report on Form 20-F for the fiscal year ended December 31, 2005;***

- ***Each of our Reports on Form 6-K filed since December 31, 2005;***

* * *

***Our audited consolidated financial statements as of December 31, 2005 and for each of the three years ended December 31, 2005, have been incorporated by reference in this prospectus in reliance upon the report of Grobstein, Horwath and Company, LLP,*** Sherman Oaks, California, independent registered public accounting firm, as set forth in their report thereon included therein and incorporated herein by reference. Such consolidated financial statements are incorporated herein by reference in reliance upon such report given on the authority of such firm as experts in accounting and auditing.   [Emphasis added.]

34.    On April 19, 2007, the Company issued a press release entitled "Qiao Xing Universal Telephone's Subsidiary Filed for Initial Public Offering and Listing on NYSE."

Therein, the Company, in relevant part, stated:

> ***Qiao Xing Universal Telephone, Inc. (Nasdaq: XING) announced today that its major subsidiary, Qiao Xing Mobile Communication Co., Ltd***. ("QXM" or the "Company"), a British Virgin Islands incorporated company that owns a 93.4% equity interest in CEC Telecom, Co., Ltd. (CECT), ***has publicly filed a registration statement on Form F-1 with the U.S. Securities and Exchange Commission ("SEC") for a proposed initial public offering of ordinary shares ("IPO") on the New York Stock Exchange ("NYSE").*** The registration statement on Form F-1 has not yet become effective. The ordinary shares may not be sold nor any offers to buy be accepted prior to the time the registration statement becomes effective.
>
> The proposed offering will consist of a primary offering by the Company and a secondary offering by the selling shareholders. ***When the IPO is consummated, Qiao Xing Universal will still maintain a majority stake (more than 51%) in QXM.*** The proposed price range per ordinary share will range from USD11.00 to USD 13.00.
>
> * * *
>
> ***The proceeds to be received by the Company from the proposed IPO will be used to repay shareholder loans to Qiao Xing Universal***, to fund CECT working capital requirements in connection with its planned mobile phone production capacity expansion, and to purchase equipments for CECT's new manufacturing facility. [Emphasis added.]

35. On May 7, 2007, the Company issued a press release entitled "Qiao Xing Universal Announces Recent Business Developments and Timeline for Release of 2006 and 2007 Q1 Financial Information." Therein, the Company, in relevant part, stated:

> Qiao Xing Universal Telephone, Inc. (Nadaq: XING) today announced its subsidiary's recent business development and the timeline for the release of 2006 and 2007 Q1 financial information of the Company.
>
> * * *
>
> ***Addressing the concern of some investors about the timing of the release of XING's annual report, Mr. Wu also said, "Owing to the involvement of the Company's management in the IPO of***

20

> *XING's subsidiary, Qiao Xing Mobile Communication Co., Ltd. (NYSE: QXM), XING's annual report for the fiscal year of 2006 will take a longer time to prepare than the investors would expect.*
>
> *"The Company remains committed to providing periodic financial information above and beyond what is required by the regulatory authorities. In addition to semi-annual financial statements and full year annual reports, we also release of our own volition financial information relating to the first and the third quarters.* We target releasing the 2006 annual reports on Form 20-F in the middle of June, 2007 and financial information in respect of the first quarter of 2007 shortly afterwards. When the specific release date is fixed, we will inform the public via a press release." [Emphasis added.]

36.     The statements contained in ¶¶ 22 – 35 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that the Company had materially overstated its net income for the years ended December 31, 2003, December 31, 2004, and December 31, 2005; (2) that the Company's financial statements were not prepared in accordance with GAAP; (3) that the Company lacked adequate internal and financial reporting controls; and (4) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

37.     On June 20, 2007, the Company issued a press release entitled "Qiao Xing Universal Telephone, Inc. to Postpone the Filing of Its 2006 Annual Report on Form 20-F." Therein, the Company, in relevant part, stated:

> Qiao Xing Universal Telephone, Inc (Nasdaq: XING) today announces that the Company will need more time than previously estimated to prepare its annual report on Form 20-F for the fiscal year 2006. *As Qiao Xing Mobile Communication Co., Ltd. (NYSE: QXM), a consolidated subsidiary of XING, has recently become a U.S. listed company which publishes its own financial statements, extra work is required to coordinate between the different auditors, finance teams and audit committees of Qiao Xing Mobile Communication Co., Ltd. and the Company in*

***connection with accounting matters during the preparation of
the annual report.***

***The delayed filing will have no effect on the published results of
Qiao Xing Mobile Communication Co., Ltd.***

While the Company will make its best effort to file the annual
report for the year 2006 as soon as possible, in the event the filing
cannot be completed by the end of June 2007, the Company will
file on Form NT 20-F a notification of inability to timely file the
annual report on Form 20-F with the SEC. A copy of the
notification will be sent to the NASDAQ, which will automatically
grant a 15-day extension without taking any adverse measures
against the trading of shares of the Company.

In any event, the Company will complete its filing of 2006 annual
report on Form 20-F on or before July 15, 2007. [Emphasis
added.]

38.     On June 28, 2007, the Company filed its Form NT 20-F. Therein, the Company,

in relevant part, stated:

The Company's consolidated subsidiary Qiao Xing Mobile
Communication Co., Ltd. (NYSE:QXM) recently became a U.S.
listed Company in May 2007 and publishes its own financial
statements. ***Additional time and effort is required to coordinate
between the different auditors, finance teams and audit
committees of Qiao Xing Mobile Communication Co., Ltd. and
the Company in connection with accounting matters during the
preparation of the Form 20-F.*** Management believes that the
Form 20-F will be filed on or before July 16, 2007. [Emphasis
added.]

39.     On July 17, 2007, the Company issued a press release entitled "Qiao Xing

Universal Telephone, Inc. Filed Form 20-F to Release its 2006 Annual Report and Restate its

Financial Data for 2005, 2004 and 2003." Therein, the Company, in relevant part, stated:

Qiao Xing Universal Telephone, Inc. (Nasdaq: XING) today
announces that on July 16 it filed with SEC a Form 20-F to release
its 2006 annual report ***and to restate its financial data for the
years 2005, 2004 and 2003***.

* * *

**The Restatement of Financial Data for 2005, 2004 and 2003**

Qiao Xing Mobile Communication Co., Ltd. (QXMC), a consolidated subsidiary of the Company, has recently become a U.S. listed company through an initial public offering, or IPO. In connection with the audits of QXMC's financial statements, *certain misstatements for the years 2005, 2004 and 2003 were identified that were not initially detected through the Company's internal control over financial reporting.*

*As a result management has decided to restate the Company's consolidated financial statements for the years ended December 31, 2005, 2004 and 2003. In the restated financial statements, net income was reduced by Rmb 3.8 million in 2005, Rmb 21.5 million in 2004, and Rmb 16.3 million in 2003.*

The restatements are described at the beginning of the Form 20-F, in Item 5 Operating and Financial Review and Prospects of the Form 20-F and in Note 2 in the 2006 financial statements of XING.

*In light of the restatements, the Company will need to improve certain aspects of its internal control over financial reporting*, as described in Item 15 of the Form 20-F.  [Emphasis added.]

40.     Also on July 17, 2007, the Company filed its 2006 Annual Report with the SEC on Form 20-F.  The Form 20-F was signed by Defendant R. Wu, and detailed the Company's financial results for the year ended December 31, 2006.  Additionally, the Company, in relevant part, revealed:

Qiao Xing Mobile Communication Co., Ltd. (QXMC), a consolidated subsidiary of the Company, has recently become a U.S. listed company through an initial public offering, or IPO. In connection with the audits of QXMC's financial statements, certain misstatements for the years 2005, 2004 and 2003 were identified that were not initially detected through the Company's internal control over financial reporting.

*As a result, management has decided to restate the Company's consolidated financial statements for the years ended December 31, 2005, 2004 and 2003 for the items discussed below. These items resulted in adjustments that reduced net income by Rmb 3,798,000 in 2005, Rmb 21,458,000 in 2004, and Rmb 16,287,000 in 2003.*

(i) In QXMC's acquisition of its initial 65% interest in CECT in February 2003 and QXMC's acquisition of an additional 25% in CECT in July 2005, certain assumptions and certain valuation methods to process data provided by management were used by the valuation specialist engaged by the Company in determining the fair value adjustments assigned to the assets acquired and liabilities assumed. *Management has reassessed the assumptions and the valuation methods used by the valuation specialist and, as a result of this reassessment, the Company has restated its prior years' consolidated financial statements to reflect adjustments that have been made to the fair value of acquired assets (including equity investments and intangible assets) and the recognition of deferred tax assets and liabilities as of the date of the acquisitions and thereafter.*

\* \* \*

(ii)   As a result of an incorrect application of the provisions of EITF No. 99-19, "Reporting Revenue Gross as a Principal Versus Net as an Agent," to transactions in which a subsidiary of the Company collected and remitted monies on behalf of certain suppliers and their clients without acting as a principal or assuming the primary obligation in the relationship, *the sales revenue and cost of goods sold during the years ended December 31, 2003, 2004 and 2005 were both overstated by equal amounts of Rmb 59.5 million, Rmb 263.1 million and Rmb 239.2 million, respectively. The overstatement, however, does not affect previously reported gross profit, income from operations or net income and has no impact on cash flows or the consolidated balance sheets of previously issued financial statements.*

\* \* \*

(iii)   *Due to the incorrect recognition of losses in excess of the Group's original guaranteed return on its equity investment in a 49%-owned entity that the Group accounts for using the equity method, the equity in earnings of equity investees and the net income for the year ended December 31, 2004 were understated by Rmb 1,579,000 and Rmb 821,000, respectively. For the year ended December 31, 2005, the error resulted in an overstatement of the gain on disposal of equity investment by Rmb 1,579,000 and an overstatement of net income by Rmb 821,000.* The impact of the error on the consolidated balance sheet as of December 31, 2004 was an understatement of total assets by Rmb 1,579,000, an overstatement of minority interests by Rmb 758,000 and an understatement of net assets by Rmb 821,000. The error has no

impact on cash flows and the consolidated balance sheet as of December 31, 2005.

* * *

In connection with the preparation of this Annual Report on Form 20-F, as of the end of the fiscal period covered by this Annual Report on Form 20-F (December 31, 2006), *the Company performed an evaluation, under the supervision and with the participation of the Company's management, including the Company's Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of the Company's disclosure controls and procedures* pursuant to Rule 13a-15(e) and 15d-15(e) under the Exchange Act.

In performing this assessment, the Company considered the implications of certain misstatements identified in the financial statements of Qiao Xing Mobile Communication Co., Ltd. (QXMC). QXMC, a consolidated subsidiary of the Company, has recently become a U.S. listed company through an initial public offering, or IPO. *In connection with the audits of QXMC's consolidated financial statements, certain misstatements for the years 2005, 2004 and 2003 were identified that were not initially detected through the Company's internal control over financial reporting.*

*As a result, management has decided to restate the Company's consolidated financial statements for the years ended December 31, 2005, 2004 and 2003.*

*These misstatements in the financial statements of the Company resulted from the following four deficiencies in the Company's system of internal controls over financial reporting:*

- *Insufficient complement of personnel with a level of accounting knowledge*, experience and training in the application of the accounting principles generally accepted in the United States of America commensurate with the Company's financial reporting requirements; this insufficient complement of personnel contributed to each of the control deficiencies discussed below:

- *Ineffective controls to ensure that the appropriateness of valuation methods was adequately evaluated and any significant assumptions used were properly supported and documented* (including those used by specialists engaged by the Company), and to ensure that presentation and disclosure

of fair value measurements were made in accordance with the accounting principles generally accepted in the United States of America;

- *Ineffective controls to identify and measure differences between the respective tax and financial reporting bases of certain assets and liabilities* and to determine the applicable income tax rate to ensure that deferred taxes were accurately presented in the Company's consolidated financial statements; and

- *Ineffective controls for the revenues recognition to recognize the technical service income in the period when the service was rendered and failed to recognize the revenue from the sales of co-operative products* in accordance with EITF 99-19, *Reporting Revenue Gross as a Principal versus Net as an Agent* on a net basis as service fee income.

*These control deficiencies contributed to the need to restate the Company's financial statements.* As described in the restatement notes at the beginning of this Form 20-F, in Item 5 Operating and Financial Review and Prospects of this Form 20-F and in Note 2 in the financial statements for the fiscal year 2006, *the impacts of the restatements on the financial statements as of December 31, 2005, 2004 and 2003 were to reduce the originally reported net income by Rmb 3,798,000, Rmb 21,458,000 and Rmb 16,287,000, respectively, in addition to other adjustments identified and recorded during the course of preparing financial statements. Accordingly, the Company's management determined that these control deficiencies represent material weaknesses, because they had resulted in misstatements.*

In addition, as a result of the management's assessment on the effectiveness of the Company's internal control over financial reporting as of December 31, 2006, *management has concluded that the following three control deficiencies identified constitute material weaknesses in addition to the four material weaknesses identified above:*

- *Lack of an effective enterprise risk management system;*

- *Lack of an effective anti-fraud program and whistleblower system; and*

- *Lack of an independent and effective internal audit function.*

Based on this evaluation, the Company's Chief Executive Officer and Chief Financial Officer concluded that *the Company's disclosure controls and procedures were not effective as of the end of the fiscal period covered by this Annual Report* on Form 20-F (December 31, 2006), as a result of the material weaknesses in the Company's internal control over financial reporting.

*We have also identified significant deficiencies in our internal control over financial reporting.*

*Remediation Steps to Address Material Weaknesses in the Company's Internal Control over Financial Reporting and Ineffectiveness of Disclosure Controls and Procedures*

To remediate the material weakness in the Company's internal control over financial reporting and the ineffectiveness of its disclosure controls and procedures, the Company has performed the following:

- Recruited in September 2006 a highly qualified accountant to increase the knowledge of accounting and strengthen internal controls within the Company. The management is committed to providing the accounting staff with additional support and training in order to enable them to identify unusual or complex transactions requiring further consideration by technical accounting experts or others within the organization;

- Engaged an independent registered public accounting firm other than the Company's external auditors, as the need arises, to assist in evaluating complex transactions such as the issuance of convertible bonds with warrants, as well as to assist in preparing and reviewing the appropriate supporting documentation; and

- Committed to engage an independent international risk consulting firm to establish, implement and monitor internal controls to ensure that sound corporate governance including an effective enterprise risk management system, an anti-fraud program and whistleblower system and internal audit functions is in place.

* * *

While we have begun to take the actions described above to address the material weaknesses and significant deficiencies identified, *additional measures will be necessary and these measures, along with other measures we expect to take to*

*improve our internal control over financial reporting, may not be sufficient to address the material weaknesses and significant deficiencies identified* to provide reasonable assurance that our internal control over financial reporting is effective. In addition, we may in the future identify additional material weaknesses in our internal control over financial reporting.

It is expected that the above remediation measures will be completed by December 31, 2007.

\* \* \*

## OPERATING RESULTS

### Fiscal 2006 compared to Fiscal 2005

\* \* \*

Net sales revenue increased by Rmb 586 million from Rmb 2,635 million for fiscal year 2005 to Rmb 3,221 million (US$ 413 million) for fiscal year 2006, representing an increase of 22.2%.

\* \* \*

Net loss of Rmb 19.8 million (US$2.5 million) was recorded for fiscal year 2006, compared with net income of Rmb 244.9 million for fiscal year 2005.

\* \* \*

### Fiscal 2005 compared to Fiscal 2004

\* \* \*

Net sales revenue increased by Rmb 915 million from Rmb 1,720 million for fiscal year 2004 to Rmb 2,635 million (US$ 327 million) for fiscal year 2005, representing an increase of 53.2%.

\* \* \*

Net income of Rmb 244.9 million (US$30.3 million) was recorded for fiscal year 2005, compared with Rmb 1.4 million for fiscal year 2004.

\* \* \*

### Fiscal 2004 compared to Fiscal 2003

* * *

Net sales revenue decreased by Rmb 63 million from Rmb 1,784 million for fiscal year 2003 to Rmb 1,720 million (US$ 208 million) for fiscal year 2004, representing an decrease of 3.6%.

* * *

A net income of Rmb 1.4 million (US$0.2 million) was recorded for fiscal year 2004, while net loss of Rmb 24.0 million was recorded for fiscal year 2003. [Emphasis added.]

41.    On this news, shares of Qiao Xing fell $2.93 per share, or 21 percent, to close on July 17, 2007 at $11.04 per share, on unusually heavy trading volume.

**QIAO XING'S VIOLATION OF GAAP RULES
IN ITS FINANCIAL STATEMENTS
<u>FILED WITH THE SEC</u>**

42.    These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting for, and disclosure about its revenues, in violation of GAAP rules.

43.    GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4 01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

29

44.     The fact that Qiao Xing will restate its financial statements, and disclosed that these financial statements should not be relied upon is an admission that they were false and misleading when originally issued (APB No. 20, ¶¶7-13; SFAS No. 154, ¶25).

45.     Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a)     The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, ¶10);

(b)     The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, ¶34);

(c)     The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, ¶40);

(d)     The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, ¶42);

(e)     The principle that "financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources

entrusted to it" was violated (FASB Statement of Concepts No. 1, ¶50);

(f)    The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, ¶¶ 58-59);

(g)    The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, ¶79); and

(h)    The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, ¶95).

46.    The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

47.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities of Qiao Xing between June 20, 2006 and July 16, 2007, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

48.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Qiao Xing's securities was actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Qiao Xing or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

49.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

50.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

51.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Qiao Xing; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

52.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

53.    The market for Qiao Xing's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Qiao Xing's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Qiao Xing's securities relying upon the integrity of the market price of Qiao Xing's securities and market information relating to Qiao Xing, and have been damaged thereby.

54.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Qiao Xing's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

55.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading

statements about Qiao Xing's financial well-being, business relationships, and prospects. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Qiao Xing and its financial well-being, business relationships, and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

56.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

57.     During the Class Period, Plaintiff and the Class purchased securities of Qiao Xing at artificially inflated prices and were damaged thereby. The price of Qiao Xing's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

58.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their

receipt of information reflecting the true facts regarding Qiao Xing, their control over, and/or receipt and/or modification of Qiao Xing's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Qiao Xing, participated in the fraudulent scheme alleged herein.

59.    Also, during the Class Period, and with the Company's securities trading at artificially inflated prices, the Company completed numerous financing activities. For example, on October 31, 2006, the Company issued $26 million of 4.5% senior convertible notes, as well as 363,637 securities purchase warrants. In connection with this issue, the Company's placement agent also received 181,818 securities purchase warrants.

60.    Additionally, on October 31, 2006, the Company announced that it had acquired complete control of its subsidiary, Qiao Xing Mobile, by acquiring the remaining 20% equity interest of Qiao Xing Mobile from minority shareholders. The Company acquired the remaining outstanding interest of its subsidiary for $43 million, financed through cash payments and the issuance of $24 million of the Company's securities. The final terms of the stock financing agreement consisted of 2 million shares of the Company's stock placed at $12 per share, with a conversion price of $14.30.

61.    Further, on May 2, 2007, Qiao Xing Mobile, the Company's subsidiary, completed its Initial Public Offering ("IPO") on the New York Stock Exchange ("NYSE"). As detailed above, Qiao Xing Mobile was a wholly owned subsidiary of Qiao Xing prior to its IPO. Many of the officers and directors of Qiao Xing Mobile are also officers and directors of Qiao Xing, including Defendants Yang, R. Wu, and Z. Wu. In connection with its IPO, Qiao Xing Mobile sold 12.5 million shares of stock to investors at a price of $12.00 per share, for gross proceeds of $150 million. Following Qiao Xing Mobile's IPO, Qiao Xing continued to maintain

a majority ownership interest in the subsidiary.  Many of the identified accounting errors and failed internal controls that gave rise to the Company's need to restate its previously issued financial statements for the years ended December 31, 2003, December 31, 2004, and December 31, 2005 arose in connection with the Company's Qiao Xing Mobile subsidiary.  As such, scienter is evidenced by defendants motivation to conceal the previously issued false and misleading financial statements to successfully complete Qiao Xing Mobile's IPO, and not call into question their accounting practices and lack of internal controls.  On July 18, 2007, one day after investors learned the truth about the Company's false and misleading financial statements, Qiao Xing Mobile issued a press release emphasizing that the financial restatements announced by Qiao Xing for the years ended December 31, 2003, 2004 and 2005 would have no effect on the published financial statements of Qiao Xing Mobile.  The press release, in relevant part, stated:

> *In preparation for Qiao Xing Mobile's initial public offering in May 2007, certain adjustments relating to 2003, 2004 and 2005 were identified and were fully reflected in the Company's audited financial statements included in the Company's registration statement filed on Form F-1 with the U.S. Securities Exchange Commission.* As a result of these adjustments, Qiao Xing Universal had to make similar adjustments to its financial statements for the years ended December 31, 2003, 2004 and 2005 because it was consolidating Qiao Xing Mobile's results.
>
> Since Qiao Xing Mobile is a consolidated subsidiary of Qiao Xing Universal, *Qiao Xing Mobile's financial results are to a large extent reflected in the financial results of Qiao Xing Universal.* [Emphasis added.]

Qiao Xing Mobile filed its Form F-1 Registration Statement with the SEC on April 17, 2007.  It filed Amended Registration Statements on April 27, 2007 and May 1, 2007.  The defendants, who were intimately involved in the preparation of Qiao Xing Mobile's IPO materials, were therefore acutely aware of the accounting errors detailed herein.  The above quoted statement

indicates that these accounting errors were "identified and were fully reflected in [Qiao Xing Mobile's] audited financial statements" in preparation for its IPO. The defendants were aware of the Company's accounting errors and failed internal controls, and that the Company's previously issued financial statements were false and misleading, and failed to disclose this to investors, despite issuing multiple press releases, and filing numerous documents with the SEC.

**Applicability of Presumption of Reliance:**
**Fraud On The Market Doctrine**

62.     At all relevant times, the market for Qiao Xing's securities was an efficient market for the following reasons, among others:

    (a)     Qiao Xing's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

    (b)     As a regulated issuer, Qiao Xing filed periodic public reports with the SEC and the NASDAQ;

    (c)     Qiao Xing regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

    (d)     Qiao Xing was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

63.     As a result of the foregoing, the market for Qiao Xing's securities promptly

digested current information regarding Qiao Xing from all publicly-available sources and reflected such information in Qiao Xing's stock price. Under these circumstances, all purchasers of Qiao Xing's securities during the Class Period suffered similar injury through their purchase of Qiao Xing's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

64.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Qiao Xing who knew that those statements were false when made.

### FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

65.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Qiao Xing's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

67.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Qiao Xing's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

68.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Qiao Xing's financial well-being, business relationships, and prospects, as specified herein.

69.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Qiao Xing's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Qiao Xing and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a

course of business which operated as a fraud and deceit upon the purchasers of Qiao Xing's securities during the Class Period.

70.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

71.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Qiao Xing's financial well-being, business relationships, and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by defendants' overstatements and misstatements of the Company's financial well-being, business relationships, and prospects throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions

alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

72.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Qiao Xing's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Qiao Xing's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Qiao Xing's securities during the Class Period at artificially high prices and were damaged thereby.

73.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Qiao Xing was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Qiao Xing's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

74.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

75.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

76.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

77.     The Individual Defendants acted as controlling persons of Qiao Xing within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

79.     As set forth above, Qiao Xing and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section

20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 29, 2007                          Respectfully submitted,

                                                 BRODSKY & SMITH, LLC

                                      By:  */s Evan J. Smith, Esquire (ES3254)*
                                           Evan J. Smith, Esquire (ES3254)
                                           240 Mineola Boulevard
                                           Mineola, NY 11501
                                           516-741-4977
                                           516-741-0626 (fax)

                                           **[Additional Counsel Appear on Next Page]**

**SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP**
Richard A. Maniskas
D. Seamus Kaskela
280 King of Prussia Rd.
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (fax)

**Attorneys for Plaintiff**